**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 13, 2016**

# In the Court of Appeals of Georgia

A16A0501. THE STATE v. HILL.

McFADDEN, Judge.

This case involves allegations that James Brandon Hill committed misdemeanor theft of services in violation of OCGA § 16-8-5 when he fled without paying a fare owed to a taxi cab driver. The investigating officer found a cellular phone in the back of the taxi cab and, by placing an emergency call from the phone, determined that it belonged to Hill. In a motion to suppress, Hill argued that this constituted an illegal search of his phone in violation of the Fourth Amendment of the United States Constitution. The trial court granted Hill's motion, and the state appeals. Because Hill had no reasonable expectation of privacy in the information at issue – his own name, date of birth, and phone number – we agree with the state there

was no search under the Fourth Amendment, and accordingly we reverse. In light of this conclusion, we do not address the issue of whether Hill abandoned the phone.

The evidence in this case is not in dispute, and we review de novo the trial court's application of law to the undisputed facts. See *Hughes v. State*, 296 Ga. 744, 750 (2) (770 SE2d 636) (2015). A law enforcement officer, who was the only witness at the hearing on Hill's motion to suppress, testified that on June 1, 2014, he investigated a taxi cab driver's claim that a man had fled without paying his cab fare. The man who fled had left a cellular phone in the backseat of the cab. The officer turned on the phone but a passcode prevented him from accessing any data contained therein. The officer, however, was able to place an emergency call from the phone, and from that call a 911 dispatcher provided him with the number assigned to the phone and with Hill's name and date of birth.

Hill did not challenge the officer's seizure of the phone found in the cab. See generally *Fair v. State*, 284 Ga. 165, 174-175 (3) (d) (664 SE2d 227) (2008) (no Fourth Amendment violation where officers seized items in plain view during processing of crime scene); *Peek v. State*, 239 Ga. 422, 426 (2) (238 SE2d 12) (1977) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be

2

introduced in evidence.") (citation and punctuation omitted). Instead, Hill argued in his motion to suppress that the officer's act of calling 911 with the phone constituted an "illegal search of [his] cellular phone for the purposes of ascertaining [his] identity." In response, the state argued alternatively that the officer's act did not constitute a "search" within the meaning of the Fourth Amendment, and that Hill had abandoned the phone by leaving it in the cab. The trial court rejected both of the state's arguments and granted the motion to suppress. As detailed below, the trial court erred in concluding that the officer's actions were a Fourth Amendment search.

The Fourth Amendment to the United States Constitution provides the right of individuals to be free from unreasonable searches and seizures. U. S. Const. Amend. IV. A Fourth Amendment search occurs when a government official physically intrudes or trespasses on a person's property. *United States v. Jones*, __ U. S. __, __ (II) (A) (132 SCt 945, 181 LE2d 911) (2012). This case does not involve such a physical intrusion or trespass. A Fourth Amendment search also occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U. S. 27, 33 (121 SCt 2038, 150 LEd2d 94) (2001) (citation omitted). See *Katz v. United States*, 389 U. S. 347, 361 (88 SCt 507, 19 LEd2d 576) (1967) (Harlan, J., concurring). Conversely, "a Fourth Amendment

3

search does *not* occur . . . unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and society is willing to recognize that expectation as reasonable." *Kyllo*, supra (citation and punctuation omitted).

In applying the subjective expectation of privacy analysis to determine whether a Fourth Amendment search occurred, "it is important to begin by specifying precisely the nature of the state activity that is challenged." *Smith v. Maryland*, 442 U. S. 735, 741 (II) (B) (99 SCt 2577, 61 LE2d 220) (1979). The challenged activity in this case is the law enforcement officer's act of calling 911 from a cellular phone that was lawfully in the officer's possession. This activity enabled a dispatcher to determine the number assigned to the phone and the name and birthdate of Hill, who was associated with that number. Thus, Hill's Fourth Amendment argument "necessarily rests upon a claim that he had a 'legitimate expectation of privacy' regarding [his phone number, name, and birthdate]." Id. at 742. We find that he had no legitimate expectation of privacy in this information.

While the application of Fourth Amendment law to this precise set of facts appears to be an issue of first impression in Georgia, there are many cases in Georgia and in other jurisdictions supporting the conclusion that a person lacks a legitimate expectation of privacy in identifying information such as name, address, or telephone

number that is used to facilitate the routing of communications by methods such as physical mail, e-mail, landline telephone, or cellular telephone. "[T]he majority of courts to consider the question have agreed that a person's name and address is not information about which a person can have a reasonable expectation of privacy." *Commonwealth v. Duncan*, 817 A2d 455, 466 (Pa. 2003). Examples of cases in which courts have found no legitimate expectation of privacy and thus no Fourth Amendment protection include: *Smith*, supra, 442 U. S. at 743-747 (II) (B) (government used "pen register" to record telephone numbers of calls made from defendant's landline phone); *United States v. Forrester*, 512 F3d 500, 509-511 (III) (B) (1) (9th Cir. 2008) (government used "mirror port" technology to learn, among other things, the "to/from" addresses of defendant's e-mail messages); *United States v. Choate*, 576 F2d 165, 174-177 (9th Cir. 1978) (government arranged for "mail cover," under which postal service provided government agency with information appearing on the face of envelopes or packages addressed to defendant); *People v. Elder*, 134 Cal. Rptr. 212, 215 (I) (Cal. App. 1976) (government obtained name and address of subscriber to particular telephone number); *Ensley v. State*, 330 Ga. App. 258, 259 (765 SE2d 374) (2014) (government obtained subscriber information associated with defendant's Internet service account);*Stephenson v. State*, 171 Ga.

5

App. 938 (321 SE2d 433) (1984) (government obtained defendant's address and telephone number by arranging for telephone company to trace and "trap" a harassing call made by defendant to victim); *State v. Neely*, 2012 Ohio App. LEXIS 165, *11 (III) (Ohio App. 2012) (cellular phone subscriber has no reasonable expectation of privacy in his own phone number and "the police can trace from a phone number dialed to the identity of the subscriber of the phone from which that number was dialed"); *Duncan*, supra, 817 A2d at 465-469 (government first obtained from shopkeeper the account number associated with defendant's bank card, and then obtained from defendant's bank his name and address). Cf. *State v. DeFranco*, 43 A3d 1253, 1259 (II) (N.J. Super. 2012) (finding that New Jersey Constitution, which defendant argued afforded more privacy protections than Fourth Amendment, was not violated when government obtained his cellular phone number from his employer, because defendant's "professed subjective expectation of privacy" in his phone number was not one "that society would be willing to recognize as reasonable") (citations omitted).

Two principles of Fourth Amendment law lead to this result. First, as to communications, there is a "core distinction: although the content of personal communications is private, the information necessary to get those communications

from point A to point B is not." *United States v. Carpenter*, 819 F3d 880, __ (II) (A) (6th Cir. 2016). Consistent with this distinction, we have held in a case involving a landline phone that the Fourth Amendment "protects only the content of a telephone conversation and not the fact that a call was placed or that a particular number was dialed." *Stephenson*, supra, 171 Ga. App. at 939 (citation and punctuation omitted). See generally Orin S. Kerr, Applying the Fourth Amendment to the Internet: A General Approach, 62 Stan. L. Rev. 1005, 1019 (II) (A) (2010) (originating telephone number is non-content information analogous to return address on envelope).

Second, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith*, supra, 442 U. S. at 743-744 (II) (B) (citations omitted). This rule applies even where the person revealing information intended its use by the third party to be limited. *United States v. Graham*, 2016 U. S. App. LEXIS 9797, *5 (4th Cir. 2016) (en banc). By using a phone, a person exposes identifying information to third parties, such as telephone companies, and assumes the risk that the telephone company may reveal that information to the government. *Smith*, supra at 744 (II) (B). See also *Ensley*, supra, 330 Ga. App. at 259. Applying this principle to the act of law enforcement officers in obtaining from a cellular phone the number associated with that phone, the United States District Court for the

7

Eastern District of Michigan held that "a cell[ular] phone number fits into the category of information that is not considered private and does not implicate the Fourth Amendment." *United States v. Sanford*, 2013 U. S. Dist. LEXIS 73624, *3 (E. D. Mich. 2013).

The fact that it was a law enforcement officer, rather than Hill, who placed a call from the phone does not change our conclusion that the information obtained was not subject to Fourth Amendment protection. Cases from other jurisdictions illustrate this point. In *United States v. Skinner*, 690 F3d 772, 777-778 (II) (A) (6th Cir. 2012), for example, the United States Court of Appeals for the Sixth Circuit held that law enforcement agents could take action to cause a cellular phone to emit information from which they could track it without running afoul of the Fourth Amendment, because the defendant did not have a reasonable expectation of privacy in the location data emitted from the phone. Courts have held that law enforcement officers could swipe a credit card that was lawfully in their possession to obtain information from the card's magnetic strip, because that information would be revealed to a third party in the normal use of the card and, consequently, was not subject to a legitimate expectation of privacy. See *United States v. L'Isle*, 2016 U. S. App. LEXIS 10345, **9-13 (II) (8th Cir. 2016); *United States v. Bah*, 794 F3d 617, 629-633 (6th Cir.

2015). Although a law enforcement officer cannot access data stored within a cellular phone without a warrant or an exception to the warrant requirement, see *Riley v. California*, __ U. S. __ (134 SCt 2473, 189 LE2d 430) (2014), courts have held that the officer can take other action with a cellular phone lawfully in his or her possession to determine the phone's owner. For example, the officer can remove the battery from a phone to acquire an identifying subscriber number, analogous to a serial number, without implicating the Fourth Amendment, because the subscriber has no "reasonable expectation of privacy in the serial number of his cell[ular] phone or other identifying information." *State v. Green*, 164 S3d 331, 344 (La. App. 2015). See also *United States v. Lowe*, 2014 U. S. Dist. LEXIS 145457, *20 (II) (A) (D. Nev. 2014). And in the context of a civil rights action, the United States District Court for the Eastern District of Virginia held that an allegation that an officer improperly placed a call from a person's cellular phone did not state a Fourth Amendment violation. *Deavers v. Spotsylvania County Sheriff's Dept.*, 2014 U. S. Dist. LEXIS 90369, at **9-10 n. 4 (E. D. Va. 2014).

Hill cites *Riley v. California*, supra, __ U. S. __, in support of his argument that the officer violated the Fourth Amendment by placing the call from his phone. Unlike this case, however, *Riley* did not concern whether an officer's acts constituted a

9

search under the Fourth Amendment. It was undisputed in *Riley* that the officers searched the defendants' cellular phones when they accessed files within the phones that included videos, photographs, text messages, and a call log. Id. at __ (I) (A), (B) & __ (III) (B) n. 1. Instead, *Riley* concerned whether such a search required a warrant even if the phone was seized incident to arrest, and the Court concluded that it did, in part because the search of a cellular phone more greatly intruded on privacy than a search of other types of items that could be seized incident to arrest. See id. at __ (III) (B), __ (IV).

Here, in contrast to *Riley*, the officer did not access any files on Hill's phone, which was protected by a passcode. He "did not attempt to retrieve any information from within the phone," *United States v. Lawing*, 703 F3d 229, 238 (II) (A) (ii) (4th Cir. 2012), but instead used the phone in a manner that caused it to send Hill's telephone number to a third party, the 911 dispatcher. We do not construe *Riley* to prohibit an officer in lawful possession of a cellular phone from placing a call on that phone in an attempt to obtain identifying information about its owner. Moreover, we do not construe *Riley* to recognize a legitimate expectation of privacy in identifying, non-content information such as the person's own phone number, address, or

10

birthdate, simply because that information was associated with a cellular phone account rather than a landline phone account or a piece of physical mail.

Because we conclude that no Fourth Amendment search occurred in this case, we reverse the trial court's grant of Hill's motion to suppress. Consequently, we do not address the state's alternative argument regarding whether Hill abandoned the cellular phone.

*Judgment reversed. Miller, P. J., concurs. McMillian, J., concurs in the judgment only.*

11