805 S.E.2d 585

**The STATE, Respondent,**

v.

**Robert Lee MOORE, Appellant.**

**Appellate Case No. 2014-001669**
**Opinion No. 5512**

Court of Appeals of South Carolina.

Heard January 18, 2017
Filed August 30, 2017
Rehearing Denied November 2, 2017

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg, for Respondent.

MCDONALD, J.:

Robert Lee Moore appeals his conviction for attempted murder, arguing the trial court erred when it (1) denied his motion to suppress evidence from a limited warrantless search identifying him as the owner of a cell phone found at the crime scene and (2) denied his motion to suppress evidence obtained pursuant to a subsequent search warrant Moore contends was based on a conclusory affidavit. Although the panel majority affirms the circuit court's denial of Moore's motion to suppress the identification information obtained from the warrantless

search of the cell phone, Chief Judge Lockemy, Judge Konduros, and I differ in our analyses of this Fourth Amendment challenge. The majority also affirms the circuit court's denial of Moore's motion to suppress the evidence obtained pursuant to the search warrant, as we find the supporting affidavit was sufficient to establish probable cause.

**Facts and Procedural History**

On the afternoon of February 25, 2013, Travis Hall (Victim) was found shot in the head in a Taco Bell parking lot. When police arrived at the scene, Victim was draped out of the driver's side door of his vehicle, and three cell phones were found in the car. The phone at issue here was an AT&T ZTE331 model flip phone (the flip phone) discovered "almost up under" the driver's side seat. The other two phones were iPhones belonging to the Victim. In addition to the three phones, money and drugs were found inside the vehicle.

Police photographed and collected the phones, took them to the Sheriff's Office, and gave them to Detective Lindsay McGraw. Detective McGraw performed limited forensic examinations to determine who owned each of the phones. Specifically, he pulled the flip phone's subscriber identity module card (SIM card) from the phone and obtained the telephone number associated with the phone. Detective McGraw provided the phone number to Investigator Tom Clark, who ran it through a database and determined the flip phone belonged to Moore. Investigator Clark then applied for a search warrant to examine the stored data on the phone. After obtaining the search warrant, Detective McGraw performed a full forensic examination of the flip phone during which he recovered stored contacts, images, call logs, and text messages.

Before trial, Moore moved to suppress any and all information derived from the search of his phone, citing *Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014). Moore further argued the search warrant affidavit submitted to support the flip phone warrant application was conclusory and did not support the finding of probable cause necessary for issuance of the search warrant. The trial court denied the motion to suppress the flip phone evidence, ruling the phone was abandoned property.

At trial, the State's evidence established Victim was at his mother's home prior to the shooting and received several phone calls from the same number. Records from the flip phone revealed five calls were made to Victim's phone between 1:03 p.m. and 2:06 p.m. on the day of the shooting.

After the shooting, witnesses observed a white Chrysler 300 rapidly fleeing the area. One witness who was on foot stated the car drove against the flow of traffic and had to slam on its brakes to avoid hitting her. Police later used surveillance footage to identify the vehicle at a gas station near the Taco Bell. The video showed that after the vehicle parked at the gas station, two men exited and threw a bag in the trash before entering the gas station. The two men were identified as Tevin Thomas and Moore. Inside, Moore bought potato chips and cigarettes, and was required to give his birthdate for the cigarette purchase. This footage showed Thomas wearing dark clothing and Moore wearing a red jacket. Other cameras at a Cracker Barrel and an automotive business recorded the vehicle after it left the gas station. The vehicle was eventually located in a neighborhood not far from the automotive business.

Thomas testified that he and Moore had planned to rob Victim during a drug deal. According to Thomas, Moore was given a revolver by a third man who did not go with them to the Taco Bell. Moore and Thomas rode to the Taco Bell in Moore's Chrysler. Once they arrived, Victim parked next to their car and Moore exited his car and got into Victim's car. Thomas stated he saw Moore pull the gun on Victim; a struggle then ensued and Thomas heard a gunshot. Thomas testified that he got out of Moore's car and tried to intervene when he saw the struggle, but the doors on Victim's car were locked. When Thomas later asked whether Moore shot Victim, Moore responded, "yeah, I seen blood coming out of his head."

A fingerprint expert testified Thomas left ten fingerprints on the exterior of the passenger side of Victim's car. None of Moore's fingerprints were found on Victim's car; however, both Thomas's and Moore's fingerprints were found on the white Chrysler 300.

Moore called eyewitness Chris Barnes, who testified he was at the Taco Bell, heard a shot, then saw a man emerge from

the passenger side of Victim's car and jump into another car. He described the man as wearing a dark colored sweatshirt and a dark colored toboggan. Barnes was shown the gas station surveillance video with Moore wearing a red jacket, but Barnes insisted the man he "locked eyes with" at the Taco Bell was not wearing red.

The jury found Moore guilty of attempted murder, and the circuit court sentenced him to thirty years' imprisonment.

**Standard of Review**

 "On appeals from a motion to suppress based on Fourth Amendment grounds, the appellate court] . . . reviews questions of law de novo." *State v. Bash*, 419 S.C. 263, 268, 797 S.E.2d 721, 723–24 (2017). As to a circuit court's findings of fact, we must affirm "if there is any evidence to support" the factual findings and "may reverse only for clear error." *State v. Brown*, 401 S.C. 82, 87, 736 S.E.2d 263, 265 (2012).

**Law and Analysis**

### I. Warrantless Search of the Flip Phone

Moore argues the initial warrantless search of the flip phone violated the Fourth Amendment, and no exception to the warrant requirement applied to justify the search. Additionally, Moore disputes the circuit court's conclusion that he abandoned his phone. I disagree that the initial, limited search to determine ownership of the flip phone violated the Fourth Amendment.

 The Fourth Amendment to the United States Constitution demands that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. South Carolina's constitution also recognizes the right of the people to be free from unreasonable searches and seizures. *See* S.C. Const. art. I, § 10 (containing language nearly identical to that of the Fourth Amendment). But not every search implicates the Fourth Amendment. "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of

privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). However, "a Fourth Amendment search does *not* occur ... unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as reasonable.'" *Id.* (quoting *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)). In cases claiming an unreasonable search and seizure, the burden is on the defendant to prove not only that the search of an item was illegal, but also that he had a legitimate expectation of privacy in the item searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (holding petitioner did not make a sufficient showing that his legitimate or reasonable expectations of privacy were violated by a search of his female companion's purse).

Particularly illustrative here is a recent case from the Georgia Court of Appeals, *State v. Hill*, 338 Ga.App. 57, 789 S.E.2d 317 (2016). In *Hill*, a police officer discovered a cell phone in the back seat of a taxi. *Id.* at 318. The taxi's driver told police that a man had fled his taxi without paying the fare. *Id.* The police officer turned on the phone but could not access any information because the phone was protected by a passcode. *Id.* However, the officer was able to use an emergency call feature on the phone to get in touch with a 911 dispatcher, who then provided the officer with the phone's number as well as the owner's name and date of birth. *Id.*

The Georgia Court of Appeals found no Fourth Amendment violation because the defendant had no reasonable expectation of privacy in his name, date of birth, or phone number. *Id.* To support its determination, the Georgia court cited the litany of state and federal cases that have concluded "a person lacks a legitimate expectation of privacy in identifying information such as name, address, or telephone number that is used to facilitate the routing of communications by methods such as physical mail, e-mail, landline telephone, or cellular telephone." *Id.* at 319. The court explained there was a "core distinction" between the content of a communication and the information necessary to get the communication from one point to another. *Id.* at 319 (citing *United States v. Carpenter*, 819 F.3d 880, 886 (6th Cir. 2016)); *see also United States v.*

*Graham*, 824 F.3d 421, 427 (4th Cir. 2016) (en banc) (addressing historical cell-site location information and holding an individual can claim "no legitimate expectation of privacy" in information he voluntarily provided to a third party). Although the content of the communication is private, the information related to its transmission is not. *Hill* at 319; *Graham* at 428.

The *Hill* court further recognized that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)); *see also Graham* at 428 (recognizing "the vast majority of federal district court judges" who have reached the same result). Therefore, the defendant's cellular phone number did not fall within the category of private information protected by the Fourth Amendment. *Hill* at 320. The police in *Hill* did not— and could not due to the presence of a passcode—access the files contained on the phone.[1][2] *Id.*

Likewise in *Graham*, the Fourth Circuit, sitting *en banc*, considered information voluntarily provided to cell phone providers, albeit in a different, and perhaps more intrusive, context. In discussing its reasoning for finding a defendant had no legitimate expectation of privacy in historical cell-site location information, the court noted:

> Moreover, outside the context of phone records, we have held that third-party information relating to the sending and routing of electronic communications does not receive Fourth Amendment protection. *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010). In *Bynum*, we explained that it "would not be objectively reasonable" for a defendant to expect privacy in his phone and Internet subscriber records, including "his name, email address, telephone number, and physical address." *Id.*

*Graham* at 432.

Like the *Hill* phone, Moore's flip phone was found at a crime scene and was examined by police before they obtained

---

1. It is unclear whether Moore's phone was passcode-protected, although when an officer was asked to review Detective McGraw's report to see whether the report indicated the phone was passcode-protected, the officer stated, "I don't see that it was."

2. Because the court found no Fourth Amendment violation, it did not reach the issue of abandonment. *Hill* at 321.

a warrant *solely* to obtain the telephone number and ownership identification. In the present case, police removed the phone's SIM card and processed it for the limited purpose of obtaining the telephone number. I recognize that even small manipulations of personal property have been held to be Fourth Amendment searches. *See Arizona v. Hicks*, 480 U.S. 321, 324–25, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (holding a search occurred when a police officer briefly moved stereo equipment inside a defendant's apartment in order to record the equipment's serial numbers). However, under the facts of this case, law enforcement's limited search of the SIM card to obtain the phone number did not constitute an unreasonable search under the Fourth Amendment because Moore had no reasonable expectation of privacy in the number itself.

Of significance here is the fact that police obtained a warrant before performing further analysis to examine the phone's contents. In *Riley*, the United States Supreme Court explained that the immense amount of personal information stored in modern cell phones makes cell phone searches inherently different from other searches conducted incident to a lawful arrest. 134 S.Ct. at 2482. The Court wrote:

> The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information ... that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible.... Third, the data on a phone can date back to the purchase of the phone, or even earlier....

> Finally, there is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception....

*Id.* at 2489–90. The Supreme Court ultimately held "that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Id.* at 2493. The Court explained:

Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life[.]" The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant.

*Id.* at 2494–95.

Unlike *Riley*, this case does not involve the warrantless search of a cell phone's stored contents. Accordingly, *Riley*'s concerns about modern cell phones operating as personal "minicomputers" are not implicated when, as here, police obtained a warrant before examining the flip phone's stored contents. *Id.* at 2489; *see also Hill*, 789 S.E.2d at 320 ("Although a law enforcement officer cannot access data stored within a cellular phone without a warrant or an exception to the warrant requirement ... courts have held that the officer can take other action with a cellular phone lawfully in his or her possession to determine the phone's owner." (internal citation omitted)).[3]

I recognize our learned dissenting colleague's admonition in *State v. Brown* that "the lack of any exigency justifying a warrantless search and the ease with which law enforcement could have obtained a warrant demonstrates further the need to comply with the warrant requirement." 414 S.C. 14, 30, 776 S.E.2d 917, 926 (Ct. App. 2015) (Konduros, J., dissenting), *cert. granted* (S.C. Sup. Ct. Order dated August 8, 2017). I also acknowledge that the best policy in cases where Fourth Amendment concerns might be implicated is to obtain a warrant before conducting a search. *See Riley*, 134 S.Ct. at 2493 ("Recent technological advances ... have ... made the process of obtaining a warrant itself more efficient."); *State v. Cardwell*, 414 S.C. 416, 778 S.E.2d 483 (Ct. App. 2015), *cert. granted* (June 16, 2016) (stating a warrant is a necessary and "relatively simple step" when seeking to conduct a full search of files on a computer). Yet, I agree with the *Brown* majority

---

3. Because I would find no Fourth Amendment violation, I have not addressed the issue of abandonment.

that in *Riley*, "the Court did not require law enforcement officers to obtain a warrant to search every cell phone that falls into their possession[,]" in every situation. 414 S.C. 14, 23, 776 S.E.2d 917, 921–22. "[T]he Fourth Amendment is not triggered unless a person has an actual and reasonable expectation of privacy or unless the government commits a common-law trespass for the purpose of obtaining information." *State v. Robinson*, 410 S.C. 519, 527, 765 S.E.2d 564, 568 (2014) (citation omitted).

As an additional sustaining ground, I find the inevitable discovery doctrine applies to the question of ownership of the flip phone. *See State v. Spears*, 393 S.C. 466, 482, 713 S.E.2d 324, 332 (Ct. App. 2011) ("The inevitable discovery doctrine, one exception to the exclusionary rule, states that if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, the information is admissible despite the fact it was illegally obtained." (citing *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984))). Detective McGraw testified he was asked to perform a forensic examination of all three phones found at the scene of the shooting. The undisputed evidence established five phone calls were made from the flip phone to one of Victim's phones shortly before the shooting occurred. Therefore, even without the use of the SIM card, Moore's telephone number would have been discovered through the examination of Victim's phones—in which Moore certainly had no reasonable expectation of privacy. *See Nix*, 467 U.S. at 449–50, 104 S.Ct. 2501 (holding the inevitable discovery doctrine applied when searchers were approaching the location of a victim's body and would have discovered it without information obtained from the defendant's unlawful interrogation).

## II. Validity of Search Warrant

Next, Moore argues the warrant to search the contents of the flip phone was impermissibly issued as the conclusory affidavit submitted to obtain the warrant did not establish the necessary probable cause. The panel majority disagrees.

A search warrant may issue only upon a finding of probable cause. *State v. Baccus*, 367 S.C. 41, 50, 625 S.E.2d

216, 221 (2006). The duty of the reviewing court is to ensure that the issuing magistrate had a substantial basis upon which to conclude that probable cause existed. *Id.* at 50, 625 S.E.2d at 221. "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Spears*, 393 S.C. 466, 483, 713 S.E.2d 324, 333 (Ct. App. 2011) (quoting *State v. Dunbar*, 361 S.C. 240, 253, 603 S.E.2d 615, 622 (Ct. App. 2004)). "A reviewing court should give great deference to a magistrate's determination of probable cause." *State v. Weston*, 329 S.C. 287, 290, 494 S.E.2d 801, 802 (1997). "Suppression is appropriate in only a few situations, including when an affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at 293, 494 S.E.2d at 804 (quoting *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

Here, the affidavit submitted with the search warrant request stated:

On 2/25/2013 at approx. 14:13 Hrs. Deputies with the Spartanburg County Sheriff's Office responded to 760 Warren H. Abernathy Hwy. In reference to a shooting. Upon arrival they found the Victim, Travis Hall had been shot. Hall was transported to SRMC. Through further investigation and the processing of the Victim's vehicle an AT&T ZTE model Z331 cell phone serial number # 22213371843 was found inside the victim's vehicle. Through further investigation it was found the phone number assigned to the phone is (864) 494-2573. Through further investigation it was found this phone did not belong to the Victim. Through further investigation it was found this phone belonged to Robert Lee Moore. This search warrant is needed for the furtherance of this investigation to obtain information from the phone that can either implicate, or clear Robert Lee Moore from any involvement in this incident.

This affidavit provided ample probable cause for the magistrate to issue the warrant. The affidavit explained *why* police believed the phone's contents would reveal evidence about the shooting and Moore's possible involvement; namely, because police discovered his phone in Victim's vehicle at the scene of

the shooting. *Contra State v. Smith*, 301 S.C. 371, 373, 392 S.E.2d 182, 183 (1990) (finding an affidavit defective on its face when it set forth no facts as to *why* police believed a defendant committed a robbery and omitted the fact that some of the information in the affidavit was provided by an informant). As the affidavit provided the magistrate with a substantial basis to find probable cause existed to support the search and, thus, issue the warrant, the circuit court properly denied Moore's motion to suppress.

**AFFIRMED.**

LOCKEMY, C.J., concurring in part and dissenting in part in a separate opinion. KONDUROS, J., dissenting in a separate opinion.

LOCKEMY, C.J., concurring in part and dissenting in part:

■■■ I agree with the dissent's Fourth Amendment analysis and would find Moore's constitutional rights were violated when officers searched his cell phone without a warrant. However, I would find the information used during trial—the identity of the owner of the cell phone—would have been inevitably discovered because officers obtained a valid search warrant prior to performing a full forensic search. Therefore, I concur in part and dissent in part.

As each of my colleagues recognize, the Fourth Amendment ensures "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Cost. amend. IV. Furthermore, as the lead opinion notes, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014).

The lead opinion indicates the officer's actions in removing the SIM card and processing the information contained therein was not a search under the Fourth Amendment because Moore had no reasonable expectation of privacy in the information recovered. I disagree that the Fourth Amendment

analysis should focus on the information searched, and instead should focus on what information could have been searched. The SIM card contained more than simply the cell phone's number, and police could have accessed that information during their search. As Chief Justice Roberts noted in *Riley*,

> a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home, it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Id.* at 2491.

I would find Moore had a reasonable expectation of privacy in the data contained on his cell phone, and any intrusion into that data constituted a search under the Fourth Amendment. Furthermore, I disagree with the State that Moore's reasonable expectation of privacy was abandoned as the facts do not support such a finding in this case. *See State v. Dupree*, 319 S.C. 454, 457, 462 S.E.2d 279, 281 (1995) ("In the law of search and seizure, . . . the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure is reasonable within the limits of the Fourth Amendment." (quoting *City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365, 370-71 (1975))); *State v. Brown*, 414 S.C. 14, 23, 776 S.E.2d 917, 922 (Ct. App. 2015), *cert. granted*, (S.C. Sup. Ct. Order dated August 8, 2017) ("Whether such an expectation of privacy has been abandoned 'is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." (quoting *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997))).

Because Moore had a reasonable expectation of privacy in the data contained on his cell phone and he did not abandon that expectation, I would find the State violated the Fourth Amendment by performing a warrantless search of that information. I concur in the result reached by the lead opinion because I believe the State would have inevitably discovered the same information using the valid warrant it later secured to continue its search of the phone. *See Nix v. Williams*, 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("If the

government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings.").

I recognize police included information gleaned from the warrantless search in their warrant affidavit. In *State v. Spears*, this court faced a similar issue regarding illegally obtained information used in a warrant. 393 S.C. 466, 713 S.E.2d 324 (Ct. App. 2011). The court excised the offending information from the warrant affidavit, and analyzed the remaining portions of the affidavit to determine if probable cause still existed to support the magistrate's decision to issue the warrant. *Id.* at 483, 713 S.E.2d at 333.

Here, I would find any information about the owner of the phone should be removed from the warrant affidavit and the remaining language should be considered under our test for probable cause. The affidavit would thus read:

On 2/25/2013 at approx. 14:13 Hrs. Deputies with the Spartanburg County Sheriff's Office responded to 7680 Warren H. Abernathy Hwy. In reference to a shooting. Upon arrival they found the Victim, Travis Hall had been shot. Hall was transported to SRMC. Through further investigation and the processing of the Victim's vehicle an AT&T ZTE Model Z331 cell phone serial number [Redacted] was found inside the Victim's vehicle. This search warrant is needed for the furtherance of this investigation to obtain information from the phone that can either implicate, or clear any individual from any involvement in this incident.

I agree with the lead opinion that this warrant affidavit would support a finding of probable cause. *See State v. Dunbar*, 361 S.C. 240, 253, 603 S.E.2d 615, 622 (Ct. App. 2004) ("The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Accordingly, I would find the evidence would have been inevitably found pursuant to the valid search warrant, regardless of the initially unlawful search.

Finally, I wish to echo the sentiments expressed in the lead opinion and the dissent cautioning officers about the practice of searching cell phones without warrants. Chief Justice Roberts stated well the importance with which courts must protect individual's rights to the "privacies of life" that are contained on cell phones. *Riley*, 134 S.Ct. at 2495. "The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." *Id.* There were no cell phones at Valley Forge. The principle of fighting and dying to make sure a soldier of the king is not allowed to kick in a citizen's door, however, is not very different than keeping a person's utmost personal information safe from unreasonable government intrusion. In the context of a search incident to an arrest, the Supreme Court created a bright line rule— "get a warrant." *Id.* While this case does not warrant the creation of such a rule in cases outside the search incident to an arrest exception, officers should tread lightly around digital information, and consider the implications of failing to obtain a warrant before searching an individual's cell phone.

KONDUROS, J., dissenting:

I respectfully dissent and would reverse and remand Moore's case for a new trial. I conclude Officer McGraw's warrantless examination of the SIM card constituted a search that violated Moore's Fourth Amendment rights. As Officer McGraw explained in his testimony, the contents one can find on a SIM card include the stored phone number, call logs, a contact list, and "things of that nature." In this case, Officer McGraw testified he recovered the cell phone number, thirty-four contact entries, and three text messages. The minute Officer McGraw removed the SIM card, he had access to digital information in which our courts have recognized an expectation of privacy. *See Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (explaining society is willing to recognize an expectation of privacy in the digital contents of one's cell phone as reasonable). Therefore, I would conclude the warrantless search of Moore's cell phone violated his Fourth Amendment rights and no exception to the warrant

requirement applies to the facts of this case.[4] *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (indicating searches without a warrant are per se unreasonable under the Fourth Amendment unless some exception applies).

The lead opinion cites to two cases—one from the Georgia Court of Appeals and one from the Fourth Circuit Court of Appeals—both of which are distinguishable from the facts in this case. In *State v. Hill*, the police used a locked cell phone to call 911 and obtain the owner's phone number, name, and date of birth. 338 Ga.App. 57, 789 S.E.2d 317, 318 (2016). Such limited identifying information is not all Officer McGraw had access to in Moore's SIM card. The 911 dispatcher in Georgia did not provide the police with the owner's contact list, text messages, or call logs. The Fourth Circuit's opinion in *United States v. Graham*, 824 F.3d 421, 427 (4th Cir. 2016) (en banc), addressed an individual's expectation of privacy in historical cell-site location information. Again, this is distinguishable from the information available on a SIM card.

Additionally, I respectfully disagree with both of my learned colleagues that this warrantless search of Moore's cell phone can be cured through inevitable discovery. The holding in *Riley* "is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, *even* when a cell phone is seized incident to arrest." 134 S.Ct. at 2493 (emphasis added). As I noted in my dissent in *State v. Brown*, 414 S.C. 14, 32, 776 S.E.2d 917, 927 (Ct. App. 2015) (Konduros, J., dissenting), *cert. granted* (S.C. Sup. Ct. Order dated August 8, 2017), I believe this language from *Riley* indicates an officer must obtain a warrant prior to searching a cell phone absent an applicable exception, even when one's expectation of privacy is diminished. Allowing officers to search the digital content of a cell phone prior to obtaining a warrant, yet cure such an invasion by arguing they could have inevitably obtained the information, circumvents the spirit of the warrant requirement. In keeping with my previous dissent and adhering to what I

---

4. I agree with Chief Judge Lockemy that the facts of this case do not support a finding Moore abandoned his expectation of privacy in the contents of the cell phone.

believe is the Court's holding in *Riley*, I would find the search of the digital contents of Moore's cell phone violated his rights under the Fourth Amendment and the case should be reversed and remanded.[5]

---

5. Because my resolution of Moore's issue regarding the warrantless search of the cell phone would be dispositive, I decline to address his second issue on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issue when disposition of prior issue is dispositive).